**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne McIntosh,<br><br>    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A.; CitiBank, N.A.,<br><br>    Defendants. | No. CV-12-1218-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dissolve the Temporary Restraining Order ("TRO") in this matter. (Doc. 13). For the reasons discussed below, the motion is denied.

## BACKGROUND

On January 12, 2007 Plaintiff executed a Deed of Trust ("DOT") in connection with a loan that he used to purchase a house on 4901 East Butler Drive in Paradise Valley ("the Property"). (Doc. 12-1, Ex. A). On November 13, 2008, First American Title Insurance Company ("First American"), at that time the Trustee of the DOT, noticed a Trustee Sale of the Property. Defendants aver that the sale was continued to May 29, 2012; nothing in the current record explains the underlying reason that that sale was continued or documents this fact. On March 26, 2010, Mortgage Electronic Registration Systems, Inc. ("MERS") acting at that time as beneficiary to First American, assigned all beneficial interest in the Deed of Trust to Citibank, N.A. as successor Trustee to U.S.

Bank National Association, as Trustee for MASTER Adjustable Rate Mortgages Trust 2007-HF, Mortgage Pass-Through Certificates, Service 2007-HF1 ("Citibank"). (Doc. 12 at 3; Doc. 12-1 at H).

Plaintiff filed for bankruptcy in 2011, and in connection with his bankruptcy was informed that he had to obtain Citibank's approval for a plan restructuring his mortgage. (Doc. 18).[1] After Plaintiff contacted Citibank, a person purporting to be Citibank's general counsel, Stephen M. Smith, wrote Plaintiff a letter stating that "I have not been able to find any evidence that Citi is the servicer or investor on your loan." (Doc. 18-1). Plaintiff responded by sending Citibank a $5.00 check and a quitclaim deed for the property, which Citibank returned with a note stating that it could not cash the check "Due to You [*sic*] Account Has Been Paid in Full." (Doc. 18-1).

At some point prior to May 14, 2012, Wells Fargo, N.A. ("Wells Fargo") and Citibank took some action in relation to the previously-noticed trustee's sale. Plaintiff filed this action in Maricopa County Superior Court on May 14, 2012, and a TRO was issued on May 25, 2012, preventing the sale. (Doc. 1-1 at 56). Defendants removed to this Court on June 7, 2012. (Doc. 1). Defendants now seek dissolution of the TRO. (Doc. 13).[2]

**DISCUSSION**

**I.  Legal Standard**

A plaintiff must establish four elements in order to be granted preliminary injunctive relief, including "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 22 (2008), *see* FED. R. CIV. P. 65. (emphasis in original). The

---

[1] On April 9, 2012, Plaintiff's bankruptcy was dismissed. (*See* BK-11-18706-RJH Bankr. D. Ariz.).

[2] There are other motions pending as well, upon which the Court will rule in due course.

Ninth Circuit considers all of the elements except for irreparable injury using a sliding scale approach, where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The element of irreparable injury is not subject to balance; the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 23 (emphasis in original). Therefore, should the moving party demonstrate a very high likelihood of irreparable injury, the likelihood of success on the merits may be relaxed. In such cases, an injunction may be granted when "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Wild Rockies*, 632 F.3d at 1134–35 (quoting *The Lands Council v. McNair*, 57 F.3d 981, 987 (9th Cir. 2008)).

"Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1952) (Frank, J.)). "Serious questions need not promise a certainty for success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Republic of the Philippines*, 862 F.2d at 1362 (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)); *see also Bernhardt v. L.A. County*, 339 F.3d 920, 926-27 (9th Cir. 2003).

**II.   Analysis**

Defendants allege that this is a run-of-the mill "show me the note" claim, and must therefore be dismissed. (Doc. 13 at 4). *See Hogan v. Washington Mut. Bank, N.A.* 277 P.3d 781 (Ariz. 2012). Defendants are correct that "the deed of trust statutes impose no obligation on the beneficiary to 'show the note' before the trustee conducts a non-judicial foreclosure." *Id.* at 783. Plaintiff here, however, is not demanding that Defendants produce the so-called "wet-ink" note. Plaintiff doubts that Citibank remained the trustee

only because Citibank's general counsel wrote him a letter stating affirmatively that the account has been paid in full and therefore would not affirm a negotiated restructuring of the loan worked out in Plaintiff's bankruptcy. *Hogan* reaffirmed that "a deed of trust, like a mortgage, may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures." *Hogan*, 277 P.3d at 782. Unlike many plaintiffs who seek relief under a show-me-the note theory, Plaintiff here did not seek to evade his obligation to pay his mortgage, but rather to refinance it through bankruptcy.

The fact that Citibank's general counsel affirmed that Citibank had no interest in Plaintiff's loan in December, only months before Citibank and Wells Fargo re-initiated the trustee's sale, presents "fair ground for litigation and thus for more deliberative investigation" regarding who owns the DOT. *Republic of the Philippines*, 862 F.2d at 1362. The record here is incomplete—there are no documents regarding the continuance of the foreclosure sale or the notice of the May 29, 2012 sale, nearly four years after the sale was originally noticed. The Court notes that the Citibank letter is "just that; a letter, and nothing more," and that Mr. Smith "does not declare that his statements are made under penalty of perjury." *In re Veal*, 450 B.R. 897, 903 (9th Cir. BAP 2011). Nevertheless, the letter does serve to raise serious questions regarding the note, and therefore supports continuing the TRO.

Regarding the other elements of the *Winter* test, it is well-established that losing a home qualifies as irreparable harm, and the public and private equities here weigh in favor of keeping the TRO in place while the underlying questions of this lawsuit are resolved.

///
///
///
///

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dissolve the TRO (Doc. 13) is **denied**.

Dated this 31st day of August, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge