**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne McIntosh | No. CV-12-01218-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Wells Fargo Bank, N.A., Citibank N.A. | |
| Defendants. | |

Pending before the Court are several motions relating to this case. Defendants Wells Fargo Bank, N.A., and Citibank N.A. have filed a Motion to Dismiss the Amended Complaint (Doc. 12), an unopposed Motion to Transfer Bond from Superior Court (Doc. 14), and a Motion for Ruling (Doc. 17). In response, Plaintiff Wayne McIntosh has filed a Motion to Maintain Temporary Restraining Order (Doc. 15), two Motions for Summary Judgment (Docs. 15, 23), and a Motion for Contempt (Doc. 22). Defendants have filed a Motion to Strike McIntosh's Motion for Summary Judgment. (Doc. 27.) For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part, McIntosh's Motion for Contempt is denied, the Motion to Maintain the Temporary Restraining Order is denied as moot because the TRO has expired, the Motion to Transfer Bond is denied as moot, the Motions for Summary Judgment are denied, and the Motions to Strike and for a Ruling are denied as moot.

/ / /

/ / /

## FACTUAL BACKGROUND

In January of 2007 Plaintiff Wayne McIntosh executed a Deed of Trust ("DOT") for property located at 4901 East Butler Drive in Paradise Valley, Arizona ("the Property") in connection with a loan for $1,300,000.00. (Doc. 12-1, Ex. B at 6-7.)[1] The DOT listed UBS AG Tampa Branch as the "Lender," Fidelity National Title as "Trustee," and Mortgage Electronic Registration Systems, Inc. ("MERS") as "beneficiary." (*Id.*)

On March 24, 2008, MERS assigned its beneficial interest to U.S. Bank, N.A., as Trustee for MARM 2007-HF1. (Doc. 12-1, Ex. C.) That same day, U.S. Bank exercised its rights as beneficiary and appointed Mark S. Bosco as Substitute Trustee. (*Id.*, Ex. D.) Bosco then filed a Notice of Trustee Sale. (*Id.*, Ex. E.) Just under four months later, on July 15, 2008, Bosco cancelled the sale. (*Id.*, Ex. F.) Effective November 11, 2008, U.S. Bank transferred its beneficial interest back to MERS. (*Id.*, Ex. G.) MERS then appointed First American Title Insurance Company ("First American") as trustee, replacing Bosco. (*Id.*, Ex. I.) On November 12, 2008, First American noticed a Trustee Sale of the Property (*id.*, Ex. J), which has been continued indefinitely. On March 26, 2010, MERS assigned its beneficial interest to Citibank, N.A. as "Trustee for MASTR Adjustable Rate Mortgages Trust 2007 HF1, Mortgage Pass-Through Certificates, Series 2007-HF1." (*Id.*, Ex. H.) It appears America's Servicing Co., which belongs to Defendant Wells Fargo, is servicing McIntosh's mortgage. (Doc. 1-1 at 3.)

---

[1] Generally, a court may not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) Motion to Dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision). This general rule, however, has two specific exceptions. First, a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original). Second, a court may take judicial notice of "matters of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Even when considering a public record, however, judicial notice is limited to those facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). In accordance with these rules, the Court takes judicial notice of the DOT and subsequent records of assignment.

McIntosh filed for bankruptcy in 2011, and in connection with his bankruptcy was informed that he had to obtain Citibank's approval for a plan restructuring his mortgage. (Doc. 18). McIntosh reached out to Citibank, and eventually received a letter from Stephen M. Smith, allegedly Citibank's general counsel. (Doc. 15 at 3.) Smith stated that he was responding on behalf of Vikram Pandit, CEO of Citibank, to address McIntosh's "suggestions for helping seniors affected by the foreclosure crisis." (*Id.*) McIntosh had sent the letter to Citibank in an apparent attempt to gain approval for his loan restructuring under bankruptcy. Smith's letter, however, stated "I have not been able to find any evidence that Citi is the servicer or investor on your loan. If you believe that we have an interest in your property, please provide me with an account number and a recent statement so that we can address issues with your mortgage. We would be happy to work with you to find a solution that allows you to reestablish yourself." (*Id.*)

McIntosh responded by apparently sending Citibank a $5.00 check and a quitclaim deed for the property, which Citibank returned with a note stating that it could not cash the check "Due to You [*sic*] Account Has Been Paid in Full." (Doc. 18-1.)

At some point prior to May 14, 2012, Wells Fargo and Citibank took some action in relation to the previously-noticed trustee's sale. McIntosh filed this action in Maricopa County Superior Court on May 14, 2012, and a TRO was issued on May 25, 2012, preventing a trustee sale on May 29, 2012. (Doc. 12-1, Ex. K.) In his Amended Complaint, McIntosh

> seeks a declaration that the title to the subject property is vested in the plaintiff alone and that the defendant, ASC f.b.o. Citibank N.A. herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendant A.S.C. f.b.o. Citibank N.A., and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

(Doc. 1-1 at 4.)

Defendants removed to this Court on June 7, 2012. (Doc. 1.) The Defendants filed a Motion to Dismiss and a Motion to Dissolve the TRO on June 21, 2012. This Court

denied the Motion to Dissolve the TRO on August 31, 2012. Defendants have also filed a Motion to Transfer Bond from Superior Court. In the meantime, McIntosh filed a Motion to Maintain the TRO and Motion for Summary Judgment. After McIntosh did not respond to the Motion to Dismiss, Defendants filed a Motion for Ruling. The Court ordered McIntosh to respond to the Motion to Dismiss, and he did. He also filed a Motion for Summary Judgment and a Motion for Sanctions, which led Defendants to file a Motion to Strike the Motion for Summary Judgment. The Court grants in part and denies in part the Motion to Dismiss, denies the Motion for Sanctions, recognizes the dissolution of the TRO, and denies McIntosh's Motions for Summary Judgment.

## DISCUSSION

**I.    LEGAL STANDARD**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted). The Ninth Circuit "construe[s] *pro se* pleadings liberally on a defendant's motion to dismiss for failure to state a claim." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998). On a motion to dismiss, the court may consider only allegations contained in the pleadings and documents referred to in the complaint. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (in considering a motion to dismiss, a court may consider only the material in the pleading and "material which is properly submitted as part of the complaint").

**II.   ANALYSIS**

    **A.   Motion to Dismiss**

        **1.   Failure to State a Claim**

McIntosh's complaint refers to a quiet title action, but he appears to assert the action of wrongful foreclosure. Either way, the Court cannot say that McIntosh's Amended Complaint fails to state a claim for wrongful foreclosure.

McIntosh's allegations support a quiet title action. A.R.S. § 12–1101 provides that "[a]n action to determine and quiet title to real property may be brought by anyone having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action." Under long-established Arizona law, however, a plaintiff cannot bring a quiet title action unless he has paid off her mortgage in full. *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941) ("[I]f it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless [the plaintiff-mortgagor] pays off such mortgage lien."); *Eason v. Indymac Bank*, CV 09–1423–PHX–JAT 2010 WL 1962309, at *2 (D. Ariz. May

14, 2010) ("[Q]uiet title is not a remedy available to the trustor until the debt is paid or tendered."); *Frazer v. Millennium Bank*, 2:10–cv–01509 JWS 2010 WL 4579799, at *4 (D. Ariz. Oct.29, 2010) (same). Defendants contend that McIntosh's quiet title claim fails because he failed to allege that he owes no balance on his mortgage. Focusing on the absence of a specific series of words ignores the nature of McIntosh's claim—Citibank told him that his account was paid in full and that it did not have an interest in his loan. These allegations meet the standard necessary to proceed on a quiet title action. *See Bergdale v. Countrywide Bank FSB*, CV-12-8057-PCT-GMS, 2012 WL 4120482 (D. Ariz. Sept. 18, 2012).

Likewise, the allegations in the Amended Complaint state a claim for wrongful foreclosure. Defendants have moved to dismiss McIntosh's complaint, asserting that it presents another meritless, "show-me-the-note" claim. While McIntosh's complaint does claim that Wells Fargo "has not been able to produce an original note or any credible evidence to dispute statements represented by the General Counsel of Citibank N.A," (Doc. 1-1 at 3), McIntosh's Response clarifies that his theory is that the letter from Citibank's general counsel, when combined with the notice he received that his account "had Been Paid in Full," amounted to a disclaimer of any interest in the property. The evidentiary conflict between the allegations of the complaint and the chain of assignments ensures that this dispute cannot be resolved on a motion to dismiss. Defendant's objections to this theory go the evidence supporting it, not the allegations of the complaint themselves.

It is true that the chain of assignments demonstrates that Citibank was the record beneficiary of the DOT at the time the most recent trustee sale was set to take place. On March 26, 2010, MERS assigned its beneficial interest to Citibank, N.A. as "Trustee for MASTR Adjustable Rate Mortgages Trust 2007 HF1, Mortgage Pass-Through Certificates, Series 2007-HF1." (*Id.*, Ex. H.) The use of the MERS system to transfer beneficial interests and appoint successor trustees does not violate any law. *See Hogan v. Wash. Mutual Bank, N.A.,* ―――Ariz. ―――, ―――, 277 P.3d 781, 783 (2012) ("[T]he deed

of trust statutes impose no obligation on the beneficiary to 'show the note' before the trustee conducts a non-judicial foreclosure."); *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1042 (9th Cir. 2011) ("None of their allegations indicate that the plaintiffs were misinformed about MERS's role as a beneficiary, or the possibility that their loans would be resold and tracked through the MERS system.... By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents.") As this Court has noted repeatedly, there is no "legal support for the proposition that the MERS system of securitization is so inherently defective so as to render every MERS deed of trust completely unenforceable and unassignable." *In re Mortgage Elec. Registration Sys. (MERS) Litig.,* MDL 09–2119–JAT, 2011 WL 4550189 at *4 (D. Ariz. Oct. 3, 2011).

Nevertheless, the allegations of the Amended Complaint are that Citibank disclaimed any interest in the property. McIntosh alleges that he attempted to confer with Citibank during his bankruptcy to have the mortgage adjusted, only to be told on two occasions by Citibank that it did not have an interest. First, McIntosh received a letter from Smith that stated only that "I have not been able to find any evidence that Citi is the servicer or investor on your loan." (Doc. 15 at 3.) This statement was not a full disclaimer in itself—Smith requested further information from McIntosh: "If you believe that we have an interest in your property, please provide me with an account number and a recent statement so that we can address issues with your mortgage. We would be happy to work with you to find a solution that allows you to reestablish yourself." (*Id.*) Nevertheless, McIntosh alleges that sent a $5 check and quitclaim deed to Citibank, to which Citibank replied that his account had been paid in full. (Doc. 18-1.) These alleged representations from Citibank raise questions about whether Citibank had disclaimed its interest in the property.

Defendants object and point out that McIntosh referred to account number 009300295 with his check. (Doc. 18-1.) They assert that 009300295 is not the account number of the loan he took out in 2007, which is listed on the DOT as 0019691674. (Doc.

12-1, Ex. B at 6.) There is no indication from the Amended Complaint, however, that the account number of the 2007 loan stayed the same when it changed hands. Indeed, the first assignment of the 2007 DOT refers to a different account number: 1146034028. (*Id.*, Ex. C.) Defendants' objection goes to the substance of McIntosh's evidence and not the allegations themselves. Consequently, it is inappropriate for resolution on a motion under Rule 12(b)(6). McIntosh's wrongful foreclosure claim can proceed.

### 2.     Failure to Serve Citibank

Citibank has also moved to dismiss under Rule 12(b)(5) for failure to serve. "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly[.]" *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)); *see Safeway Stores, Inc. v. Ramirez*, 409 P.2d 292, 298 (Ariz. 1965) ("[Defendant] not having been served personally, we hold the court did not have jurisdiction over [Defendant] personally."); *Hilgeman v. Am. Mortgage Sec., Inc.*, 994 P.2d 1030 (Ariz. Ct. App. 2000) ("If a defendant is not properly served with process, any resulting judgment is void and must be vacated upon request.") (citing *Marquez v. Rapid Harvest Co.*, 409 P.2d 285, 287 (Ariz. 1965)). In cases such as this, that are removed to federal court from state court, "[t]he issue of sufficiency of service of process prior to removal is strictly a state law issue[.]" *Lee v. City of Beaumont*, 12 F.3d 933, 936-37 (9th Cir. 1993) (citing *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980)); *see Schwartz v. Ariz. Primary Care Physicians*, 964 P.2d 491, 494 (Ariz. Ct. App. 1998); *see also* 28 U.S.C. § 1448. "'[T]he purpose of process is to give the party to whom it is addressed actual notice of the proceedings against him, and that he is answerable to the claim of the plaintiff.'" *Scott v. G.A.C. Fin. Corp.*, 486 P.2d 786, 787 (Ariz. 1971).

Pursuant to Ariz. R. Civ. P. 4, service of process must be made within 120 days after the complaint is filed unless the court otherwise directs:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss

> the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Ariz. R. Civ. P. 4(i); *see* Fed. R. Civ. P. 4(m).[2] Service upon a corporation like Citibank *must* be made as follows:

> [B]y delivering a copy of the summons and of the pleading to a partner, an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the party on whose behalf the agent accepted or received service.

Ariz. R. Civ. P. 4.1(k) (emphasis added). The same principles apply for out-of-state defendants, who can be served in the same manner as in-state corporations, see *id.* 4.2(b), or via mail in some instances, see *id.* 4.2(c).

"The words 'agent authorized by appointment or by law' contained in Rule [4.1(k)] mean, in the former category, actual appointment to receive service of process, . . . and in the latter category, authorization by legislative enactment." *Bowen v. Graham*, 684 P.2d 165, 168 (Ariz. Ct. App. 1984) (citations omitted); *see Kalakosky v. Collins*, 609 P.2d 596, 597 (Ariz. Ct. App. 1980) ("The term 'agent authorized by appointment' means actual appointment, express or implied, for the purpose of receiving service of process."); *Sloan v. Florida-Vanderbilt Dev. Corp.*, 529 P.2d 726, 729 (Ariz. Ct. App. 1974) (stating that service on person's attorney would be ineffective unless attorney had actual authority to accept service); *see also Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1248-49 (9th Cir. 1987) (same) (citing *Kalakosky* and *Sloan*); *Federal Civil Procedure Before Trial* § 5:192, at 5-40 ("The person appointed must have been given *authority to receive process* on behalf of the defendant.") (emphasis is original). The Rules place the burden of demonstrating service on the plaintiff.

---

[2] The addition of Ariz. R. Civ. P. 4(i) in 1991 was "intended to bring the state rules into conformity with the federal rules." Ariz. R. Civ. P. 4, State Bar Comm. Notes, December 1991 Amendment.

McIntosh has not shown that he effectuated service of process on Citibank. He states that he served two entities: Corporation Service Company and law firm Tiffany and Bosco. In his Response to Defendants' Motion to Dismiss, McIntosh attached two declarations from Jack Cox, a private process server. (Doc. 21 at 4-5.) Those documents do not show that Citibank was served. The attempt to deliver the summons to Tiffany & Bosco failed because, as the process server noted, there was "[n]obody authorized to accept regarding this matter." Corporation Service Company apparently accepted service, but only on behalf of Wells Fargo. Citibank contends—without any controverting evidence from McIntosh—that none of these entities was authorized to accept service on its behalf. The rules governing service of process are strict, and McIntosh's failure to comply cannot be excused. Consequently, Citibank is dismissed from this action without prejudice. McIntosh will have 30 days to effectuate proper service on Citibank. If McIntosh fails to properly serve Citibank within those 30 days, Citibank will be dismissed from this action with prejudice.

### B. Motion to Continue the TRO

McIntosh filed a Motion to Maintain Temporary Restraining Order. (Doc. 15.) On May 25, 2012, the Maricopa County Superior Court entered a TRO, restraining America's Servicing Company (Wells Fargo) from proceeding with the Trustee's Sale of the Property that was scheduled for May 29, 2012. (Doc. 12-1, Ex. K.) Counsel for the Defendants was not present at this hearing. (*Id.*) The court set a Return Hearing on McIntosh's request for a Preliminary Injunction for June 8, 10 days later. (*Id.*) The case, however, was removed to this Court on June 7, before the state court could conduct the preliminary injunction hearing.

Arizona Rule of Civil Procedure 65(d)(1) provides, in relevant part, that "[e]very restraining order shall expire by its terms within such time after entry, *not to exceed 10 days,* as the court fixes, unless *within the time so fixed* the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." Ariz. R. Civ. P. 65(d)(1) (emphasis added).

1  "A temporary restraining order must expire within ten days and may be extended only for
2  good cause." *DePasquale v. Superior Court In and For Cnty. of Maricopa,* 181 Ariz. 333,
3  336, 890 P.2d 628, 631 (Ct. App. 1995). Thus June 8, 2012, was the expiration date of
4  the TRO under Arizona law.

Removal of the case to federal court did not displace the June 8 deadline. "An ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 439–40 (1974). In *Granny Goose Foods,* the Supreme Court applied that rule in the following manner:

> The temporary restraining order was issued by the Superior Court on May 18, 1970, and would have remained in effect in the state court no longer than 15 days, or until June 2. The case was removed to federal court on May 20, 1970. The temporary restraining order therefore expired on May 30, 1970, applying the [then-existing] 10–day limitation of Rule 65(b) *from the date of removal.*

*Id.* at 440 (emphasis added). The Court made clear "[o]nce a case has been removed to federal court, its course is to be governed by federal law, including the Federal Rules of Civil Procedure." *Id.* at 441. Federal Rule of Civil Procedure 65(b)(2) provides that a TRO without notice expires after 14 days.

Applying the *Granny Goose Foods* limitation, the TRO dissolved on June 8, 2012. Because the expiration date under state law (June 8) occurred before the 14-day point after removal (June 21), the June 8 date is the actual date of dissolution. *See Granny Goose Foods*, 415 U.S. at 439-40. McIntosh did not file his motion to continue the TRO before its expiration, as he must for the TRO to have continued. *See* Fed. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."); Ariz. R. Civ. P. 65(d) ("Every

- 11 -

temporary restraining order granted without notice shall . . . expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period."). Consequently, the TRO dissolved on June 8, 2012, and McIntosh's motion to continue is denied as untimely.[3] In the event that McIntosh seeks to prevent the sale of the Property, he must comply with the provisions of the Federal Rules of Civil Procedure and file an appropriate motion.

### C. Motion for Contempt

McIntosh has moved this Court to impose sanctions amounting to $100,000,000.00 on Wells Fargo for violating the TRO. (Doc. 22.) McIntosh claims that Wells Fargo violated and is still violating the TRO by continuing the trustee sale day on a bi-weekly basis. (*Id.* at 1.) The text of the TRO, however, "restrain[ed] Americas Servicing Company from proceeding with the trustee's sale of the property located at 4901 E. Butler Dr., Paradise Valley, Arizona, 85253." (Doc. 25-1, Ex. A at 3.) McIntosh does not claim that Wells Fargo has actually proceeded with the sale of the property; instead, Wells Fargo appears to be postponing the sale in 14- or 30-day increments. These actions did not violate the terms of the TRO. Moreover, as described above, the TRO dissolved on June 8, 2012, and Wells Fargo is no longer bound by its terms. Accordingly, McIntosh's Motion for Contempt is denied.

### D. Motion for Summary Judgment

McIntosh has twice filed for summary judgment even though the parties have not yet conferred pursuant to Rule 26(f) or conducted any discovery. Wells Fargo has moved to strike those motions or deny them without prejudice. "Summary judgment should not be entered where relevant evidence remains to be discovered. In light of the virtually non-existent evidentiary record, summary judgment at this stage would be premature. No

---

[3] It is true that this Court denied Defendants' Motion to Dissolve the TRO. (Doc. 19.) Defendants, however, did not contend that the TRO expired pursuant to law.

- 12 -

discovery has taken place, and it is plain from the Court's review of Plaintiff's motion that his claims have not been thoroughly developed." *Jordan v. Ryan*, No. CV09-1013-PHX-DGC (ECV), 2010 WL 1541588, at *1–2 (D. Ariz. Apr. 19, 2010) (denying plaintiff's motion for summary judgment and denying defendant's motion to strike same as moot). The Court agrees that the motions for summary judgment are premature. McIntosh is advised that he must become familiar with, and follow, the Federal Rules of Civil Procedure and the Rules of the United States District Court for the District of Arizona ("Local Rules"), which may be obtained in the Clerk of Court's office, before filing any further motions for summary judgment.

## CONCLUSION

McIntosh's Amended Complaint states a claim for wrongful foreclosure and quiet title. But his failure to serve Citibank in accordance with the Arizona Rules of Civil Procedure results in Citibank's dismissal. McIntosh has 30 days to properly serve Citibank. The TRO, however, expired pursuant to state law on June 8, 2012, and McIntosh did not file a timely motion to continue it. His untimely motion must be denied, and the dissolution of the TRO renders Wells Fargo's Motion to Transfer Bond moot. McIntosh's Motion for Contempt is denied because Wells Fargo has not violated the TRO, and, in any event, the TRO has expired. Finally, McIntosh's Motions for Summary Judgment are denied without prejudice.

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. 12) is **granted in part and denied in part**.
2. Defendants' Motion to Transfer Bond from Superior Court (Doc. 14) is **denied as moot**.
3. McIntosh's Motion to Maintain Temporary Restraining Order (Doc. 15) is **DENIED.**
4. Defendants' Motion for Ruling (Doc. 17) is **denied as moot**.
5. McIntosh's Motion for Contempt (Doc. 22) is **DENIED.**

6. McIntosh's Motions for Summary Judgment (Docs. 15, 23) are **denied without prejudice.**

7. Defendants' Motion to Strike (Doc. 27) is **denied as moot.**

Dated this 19th day of November, 2012.

*A. Murray Snow*
/G. Murray Snow
United States District Judge